Good evening, Your Honors. I'm Teresa Reniker, appearing on behalf of the appellant, Mr. Gores. I'm reserving two minutes of my time for rebuttal. Mr. Gores became entitled to- Let me ask you one question at the beginning. Could you tell me how you can get around or distinguish Peralta v. Hispanic Business? Yes. Peralta actually, I think, supports our position in this case because it says that in cases of egregious violations of ERISA's fiduciary standards, which Peralta didn't show, but I believe this case will, that the court will find an equitable remedy for the violations, including, as in the Verity case and the Matthews case, monetary relief. Why do you suggest in here that this is not an ordinary violation but is an egregious one, more egregious than Peralta, where they canceled the insurance that the person was counting on and never notified her, and she lost completely any coverage and had a serious injury and received no, no one paid her medical benefits? That was not considered egregious. Where in your arguments have you said this is not, this comes within that extraordinary group of egregious cases that are an exception to the rule? The court in Peralta says that there was a mere negligent failure to renew a long-term disability insurance policy. There was no showing- Well, it wasn't a failure to renew. It was a cancellation for some reason that nobody seemed to know in the middle of the policy without notifying the employees. Exactly. No one seemed to know what had happened. There was some kind of oversight, and the employees were told that the insurance would be reinstated as soon as possible. It had been canceled by mistake. In this case, we have a failure to recognize a beneficiary designation that the plan had in its possession that was countersigned by a plan representative for some 16 months. Why are you suing for breach of fiduciary duties instead of for benefits under 1132A1B? Mr. Gores received the benefits that he's entitled to under Section 502A1B because he received the balance in the – that was allocated to the participant as of the date of distribution. However, because the plan's fiduciaries breached their duty, that valuation did not occur as soon as practicable after the death of the participant. So the core of this claim is breach of fiduciary duty. It's not- Okay. So if you get an injunction saying go back and fix your records, then what happens? If we get an injunction saying go back and fix the records to reflect that the valuation should have occurred as soon as practicable after the death, then Mr. Gores becomes entitled to additional benefits under the terms of the plan. Automatically? Or do you have to sue under 1132A1B? No. He should be paid automatically. Well, doesn't that then become a money judgment basically? No, it doesn't. Because just as in Matthews, the judgment is for a modification of the plan records. It creates an entitlement to additional benefits, just as in Matthews, just as in Verity. But it's not in itself a money judgment. Now- If we say go back and correct your records, would Schwab have any kind of defense that there's already been an election of remedies or anything of that sort? No, it would not. So if you win here, you get the jackpot. Well, if we win here in this Court, we get to go forward with the claim for breach of fiduciary duty that was dismissed for lack of remedy. That's just a formality, right? I mean, this is not really the two-step process that you portrayed it in the brief. Well, it is a two-step process in the sense that it creates a right to benefits under section under the plan. The idea that right would be enforceable under section 502a1b if it had to be judicially enforced, but there's no reason to believe that it would have to be judicially  Presumably, Schwab would honor Mr. Gore's rights under the terms of the plan. Even if the result of an order to modify the plan records could be characterized as a money judgment, that doesn't mean that it's barred by section 502a3. Section 502a3 specifically contemplates equitable relief to redress a violation of the statute, and it's absolutely clear that in courts of equity in the days of the divided bench, this remedy, payment of the loss of value in the trust property due to a breach of fiduciary duty would have been available to a beneficiary in the case. If we were riding on a clean slate, I mean, the argument makes a great deal of sense, intuitively, logically, every other way. But, I mean, we've got McLeod, we've got Farr, we've got Great West, and it's hard for me to understand how we can circumvent those cases in the way you suggest. Well, the three cases. There is no fund. I mean, the money here was paid out. There is no ongoing plan, fund, whatever. Well, there is an ongoing plan. Now, a 401k plan such as this is a unitary corpus of trust assets. And there's no indication that that plan has gone away. Well, no, but his interest in the retirement fund, such as it was at the time, was paid out. It's not. His interest as of the time that he was finally recognized as a beneficiary was paid out. But his interest in the plan as of the time of the participant's death was not paid out. That substantial portion of that was lost due to the delay by the fiduciary. I understand that. But to return to your question about the prior decisions, all of the decisions – three of the decisions that you cited, McLeod, Farr, and Bast, predate Great West, and they didn't undertake the historical inquiry into the remedies that were typically used. Yeah, but neither do you. I mean, you know, at least as I understand it, your briefing picks up on the law of trust. And at least if I read Great West correctly, I say that's the wrong route. The route is to look at general treatises of what was normally, typically, generally available at equity, not just in the branch of it that has to do with trust law. Well, we have looked at Pomeroy's equity jurisprudence, at Dobbs on remedies. These are general treatises, not specific to trust law. Now, the remedy that we're looking for here is a trust law remedy, but it was available exclusively, distinctively, in equity. But not the run-of-the-mill, typical equity case. Well, it was not available in an equity case other than a case by a beneficiary against a fiduciary, but that doesn't – there's no equitable remedy that was available in every case at equity. For example, the remedy in Sereboff, the Supreme Court's recent decision that postdates all of the Ninth Circuit's decisions, including Peralta. In Sereboff, the remedy is equitable lien by agreement. An equitable lien by agreement would not have been available in every case at equity or in equity as a general rule. It would have been available in a case where there was a prior agreement to pay money and an equitable lien arose out of that agreement. In particular, that remedy would not have been available in a case such as this one arising out of an express trust. So to say that a remedy must have been available in any case in equity, absolutely any case that could have arisen in equity, is to say that there's no remedy and we know from Sereboff that that is not true. Do you want to save time for rebuttal? You've got just over a minute left. Yes, thank you, Your Honor. Would you mind if I ask one more question? Sure. I'm still not sure I understand why you didn't sue originally for payment of the full benefits. You say you were owed $1.6 million or something like that and they only paid you $500,000. Why didn't you sue right then and there under 1132a1b saying you only gave me half the money? Because the benefits are not payable under the terms of the plan. It's payable as a result of the breach of fiduciary duty. The terms of the plan say that the account is to be valued as of the date of distribution, and that occurred. The account was valued as of the date of distribution. The date of distribution was simply 16 months too late. Okay. Thank you. Thank you, Your Honors. May it please the Court. I'm Robin Springberg-Perry for Amica Secretary of Labor. This case involves a fiduciary that directly breached its duties to a beneficiary. So the question here is whether that beneficiary can recover under 502a3 under appropriate equitable relief. And the Supreme Court in Great West told us how to analyze this. Look at the historical text to see how such a claim would typically be brought in the days of the divided bench. Is that any different from Peralta? Isn't that a case also in which the fiduciary breached the duties to the beneficiary? Your Honor, Peralta did not seek relief to put her in the position she would have been in but for breach, which is one of the three equitable remedies that could be sought. Cancellation of the plan was not an equitable breach. It was not a fiduciary breach. And absent the breach, she still would not have had the benefits. Okay. Peralta did not seek the benefits that she would have received but for the breach? I don't believe so, Your Honor. No. She sought, she didn't seek relief to put her in the position she would have been in but for the breach. That's all she wanted, wasn't it? Was there the benefits she would have had under the policy? But if the plan had not been canceled, the cancellation itself was not a fiduciary breach. The failure to notify them of the cancellation was the breach. Yes, the failure to notify was. But the sponsor was able to terminate the plan, was able to cancel the plan, so that was not the breach. I understand that what they want is an injunction ordering the plan to correct its records and that you don't agree with that. Well, Your Honor, it's a small difference, I think. What would they be entitled to under your construct of this? There's two different ways that we look at it that they could be entitled. They could be entitled to be put back into the plan within statement, but our concern is simply that it's specified that the fiduciary itself be responsible for the funds, not the plan. Do you think we could order the order back in the plan? That's what you think we can do? I do think that's one possibility. I think the more typical remedy under equity would simply to be ordered that the fiduciary directly pay the beneficiary. A money judgment.  But, Your Honor, Sereboff clarifies that simply because it's monetary does not mean that it's a legal remedy. A lot of the courts after Great West misunderstood Great West to say that if it was monetary, you could not have it in equity. And Sereboff specifically said that that was not the reason that the court in Great West they said this court did not reject Great West's suit out of hand because of alleged breach of contract and sought money. It was because it didn't seek a specific remedy that was typically available in equity. In that case, it didn't seek to recover a particular fund. That's equitable restitution. The remedy that they're seeking here that was typically available in equity was to be placed in the position they would have been in, but for the breach. And the reason why they're asking for, correct your records. I think it's we don't specifically, it's not that we have a problem with the remedy, Your Honor. Well, your brief says the Secretary does not support the particular remedial method that Gore seeks here, requiring the fiduciary to modify the records. Yes. What we don't support is that it be made without some reference to the fact that the fiduciary is the one who should pay the money, because if they're put into the plan and the plan pays the money, we don't want to see the other participants lose out on behalf. But if the plan should have paid at the beginning, the plan is just being put in the position it would have been in. Yes, Your Honor, but that money would have been in there, the plan would have had that money. If right now that plan has to reach for the money to the other participants, that's a different situation than would have happened at the time. And it would, in fact, be a fiduciary breach for the fiduciary to allow the plan now to pay out to everyone else without the fiduciary putting in the money to redress it. The fiduciary is the one who breached its duties. The fiduciary is the one who should pay. Now, if they're instated into the plan, that's legitimate. Mr. Gorse is instated into the plan, the plan causes it to pay out, and the fiduciary should make a contribution to the plan for the difference. If the fiduciary does not, the other participants would have a cause of action against the fiduciary saying, you owe this money into the plan. We simply say that pragmatically, it would make sense for this Court to consider that in its order and make clear that it is the fiduciary ultimately who's on the hook for the money and not the plan and the other participants. It's a technical difference. I know you, that is the EOC, has taken this show on the road around the country, including in the Supreme Court, without apparent success. And as I look at the parade of other circuits, you've got the Second, the Fourth, the Sixth, I believe, the Eighth, the Tenth, who all read the cases as our circuit does and have rejected arguments that are quite similar to the ones that Gorse makes here. So on what basis, how would you say that this is such that we should ignore what other circuits as well as we have said? Well, there is a circuit split, Your Honor. The Seventh Circuit pre-Great West in Bowerman did follow this argument, and it's reiterated recently in McDonald. In that case, plaintiff, it was they remanded it for consideration of possible heuristic claims and specifically called the courts, called the lower courts' attention to Ginsberg and Breyer's concurrence in Davila, which explicitly distinguished claims for equitable relief versus a fiduciary and a non-fiduciary, the same distinction we make here. That's McDonald v. Household International. It's Fort Worth, North Carolina, and Burrard.   It's a case that we should look at, and the only way to do that is to get back up to the Supreme Court, I would suppose. Your Honor, for the moment, we're here and we're discussing here in the ninth circuit. Yeah. Have you ever thought about going to Congress and telling them that this is an inequitable law in many respects, that ERISA was designed to protect workers and the way it's being interpreted, it hurts workers more than it helps them, and that you would like to see some amendments to the statute so that cases like the one we were just forced to do before in Peralta and this are remedied? I've seen that point made, Your Honor, but what we're saying is that without revising the statute, it's there already. Well, just in case you happen to lose, you might like to go to a more friendly Congress and tell them that the administration is concerned about the workers and we could see some amendments to ERISA. I understand what you're saying, Your Honor. My job is simply to present the litigation. I'm not the one who goes to Congress, so I can't speak to that other than that has no core. You must have some friends in the department. I can mention it. But we but what I want to say is that here we think the remedy is there, that the concurrence in Davila notes that, that Davila leaves it open, and that Sereboff makes it clear that monetary relief does not mean legal relief. If there are funds to trace. That's for equitable restitution, Your Honor. There's three possible branches for relief and equity. One of them is equitable restitution, but one of them is for any loss or depreciation in the value of the trust case. And the Restatement of Trust 205 recognizes that these are three alternate equitable remedies that and specifically notes that each may not be available. And Sereboff notes that equitable restitution is the only version that was addressed in the Great West, but that that does not mean that Great West looked at the all-possible universe of all equitable remedies. Okay. Thank you, counsel. I'm sorry. Is my time? Okay. I couldn't tell. It says stop, but then it's still counting time. Thank you, Your Honor. We just ask that you remand and direct this case to go forward in the lower court. Thank you. May it please the Court. My name is Kim Zeldin, and I'm here on behalf of the appellees, the Schwab defendants. I'd like to begin by pointing out what has already been pointed out by this Court, which is that the all of the authority, Merton's, Great West, many circuits, including this one, have rejected the arguments that are being proffered by the plaintiff. Well, yes, but stepping back from it, it's really hard to imagine a situation that is less attractive than a fiduciary who messes up and is not held accountable for it. This Court has considered that argument before, for example, in the case of Bast, which involved much more sympathetic facts. Can you speak up a bit, please? Yes. It involved much more sympathetic facts.  The plaintiff was a carrier, and the carrier, the fiduciary, failed to provide the benefits needed. And finally, when they decided to provide the benefits, it was too late, and the woman was not able to survive as a result. And there was a suit involving that claim. And that, I would say, is a little more sympathetic than this particular case in terms of whether there is a remedy for money damages. I'd like to also point out that the statute itself does allow for money damages. 502A2 allows for money damages in claims on behalf of the plan. Here, under 502A3, there is no remedy for money damages. How about an injunction? Excuse me? How about an injunction? Well, an injunction here would not get the remedy that is sought. An injunction here would be an injunction to pay money. Well, no. Suppose it just says go fix your records. It doesn't say anything about money. Well, okay. I think that the main thing to understand there is that here we are involved with a 401K plan, an individual account plan. And as the Department of Labor acknowledged in its brief, the only way in order to be able to pay these, to pay that money would be to pay it out of the participant's accounts. Well, who pays it is really of no concern to me. I mean, if they get an injunction, if it says your records were wrong in 1999 or whenever it was, go fix it, period. We couldn't pay it out of the plan because the problem is we couldn't pay it out of the participant's accounts. It doesn't say pay anything to anybody. It says go fix your records. Well, fixing the records wouldn't remedy the problem. If we fix the records. Well, that's their problem. I mean, that's if they're asking for an injunction to fix the records, what's your objection to an injunction to go back and fix the records? It would be vain. Inequity does not allow a vain act. It would be, there would be no point to fixing the records. The records would be fixed. They would have to, as they acknowledged and the district court acknowledged below, that they would have to bring a claim under 1132. So it is a two-step process. It isn't a money judgment now. It is not a money judgment. They would have to bring a claim for benefits. And frankly, the claim for benefits would be denied because there is no, we could not pay the money from the assets. Okay, but that's their problem. If they lose on the second step, they lose on the second step. But I don't understand why they wouldn't be entitled to an injunction now that says go back and fix your records, and wherever that takes them, that takes them. They may win, they may lose, and they get rained out. I mean, you know, you just don't know. Well, you can't ask for a remedy that doesn't accomplish what you're seeking. Well, it remains to be seen whether it would accomplish anything or not. Just because you say they're not going to win in the second step, maybe they're more optimistic than you are. Let me clarify. If they actually, if it was the case that they actually made the modification of plan records happen, where would the money come from? Okay. There are two possibilities. The first one is that it would come from the plant. It cannot come from the plant under the law. That would be a prohibited transaction. The fiduciaries cannot allow the money to be coming from the administrative accounts. That's what the Department of Labor pointed out. It cannot come from each of the other participants' accounts. There's no other place for it to come from. So, therefore, the fiduciaries would have to put the money in the plan. Okay. But that's an entirely different argument than saying they can't get a, they can't get an equitable order here. Well, the plant, but the fiduciaries wouldn't put the money in the plan. There's no reason that you would need to order that the fiduciaries put the money in the plan. That's what I'm saying. And in order for the amendment to be effective, you have to order that. You have to require the fiduciaries to put the money in the plan, which is why the DOL is arguing that. And if you put the money in the plan, that is not injunctive relief. That's a claim for compensatory damages. So, just so I understand correctly, if they were to win, we were to say go back and issue an injunction that says Schwab, go amend your records as of a certain date to reflect that this guy was the beneficiary as of that date. Yes. Then it would be up to them to make whatever hay of that they can make. They could make a claim for benefits, but we could not pay the benefits from the assets of the plant. I don't understand the facts of what we would be doing. Do your records now show that he was not the beneficiary as of all along? No, he was the beneficiary. He was always the beneficiary. Yes, he was always the beneficiary. So what would our order correct? According to what they would like. This is my understanding of their argument. They want to modify the records to say that there would be, instead of getting the benefits in 2004, that he should have gotten the benefits, I think, in 2001. I don't understand how that's correcting a record. That's a determination that he was entitled to relief at an earlier time. You're absolutely correct, Your Honor, but that's their argument. And I actually agree with you. That is not a modification of plan records. You're right. That's not what they're asking for. They're asking for money damages, just as you said. I think that the Court has, in order to rule in the favor of Mr. Gores here, you would have to contradict Great West, Mertens. You'd have to overrule McLeod, Farr, and Bast. What about Matthews? They say the case is controlled by Matthews. Well, that's with respect to the argument about modification of records. In Matthews, you have to remember that in Matthews what was involved there was a defined benefit plan. So that's why the benefits could, the distinction is, is that that's why the benefits naturally flowed from the changing of the records or the reinstatement into the plan. What happened in Matthews is they put the people back into the plan or instated them into the plan, and then automatically the benefits flowed from that. In a defined benefit plan, your benefit is determined by a formula. It doesn't matter whether the market fluctuates up and down. It doesn't matter if the plan is losing money or gaining money. Defined benefit plans are often overfunded. So the money could have come from the overfunding, okay? We don't know whether or not the money came from the fiduciaries, but even if it came from the fiduciaries, it came from the fiduciaries to put into the plan because the plan mandates that, because the plan has to be funded. There has to be enough money to pay the benefits. So it was, you just get your benefits depending on your term of service. You don't get your benefits like you do in a 401K account, according to how much money happens to be in the account when you leave the plan. So Matthews doesn't control because it's a defined benefits plan, that's it? And it's also a reinstatement into the plan rather than what they're calling a modification of plan records, which Judge Reinhardt has just pointed out very aptly, is really not a modification of plan records. There's no record to be modified. That's not what's happening here. They're just asking for benefits on a different date. That's not a modification of plan records. Suppose they had asked to be reinstated in the plan instead of asking for a correction of the records. They could. They would have to reopen an account that no longer exists for him, and there would be nothing in the account. What would be the point of that? There's, again, there's, I mean, asking for a remedy that doesn't have any, doesn't give you the consequences for which you seek seems to me to be completely vain. It doesn't seem to have any point. One of the reasons that I think that the DOL is wrong about the distinction is that I think that Judge Reimer pointed that out, but that there's a distinction in the law between a primary right and a remedial right. And the Supreme Court focused on the remedial right, not on the primary right. And the Supreme Court looked at remedies. And actually, Pomeroy, one of the treatises that has been cited by the Department of Labor and by Flores lists equitable remedies. And there's a section on equitable remedies. And notably in equitable remedies, there are no money damages is not an equitable remedy. All damages that could have been awarded in a court of equity by beneficiaries against fiduciary would include direct consequential and punitive damages. That shows the fallacy of their argument, because obviously under Russell, consequential and punitive damages were not recoverable. With respect to their argument about what, that this is limited to some kind of make-whole relief, and that was only available in equity against fiduciaries, that's just not true. Fiduciaries could receive legal remedies such as consequential direct damages with what they're contending and punitive damages. If this isn't money damages, we have to ask ourselves, what is then a money damage claim? They can characterize it and label it as a modification of plan records, but if the modification of plan records will not get them the remedy that they want, then I fail to understand why that would be, in fact, a remedy that is equitable. It doesn't actually get you the remedy that you seek. Kennedy, you don't have to use the entire time. I was just going to say I think I'm done now. Thank you very much. I appreciate it. Your Honors, we've heard a lot about legal damages here. Legal damages, as the Court wrote in Great West, refers to money that is awarded as reparation for injury resulting from a breach of legal duty. There is no breach of legal duty here. There is a breach of fiduciary duty, and it is a breach of fiduciary duty for which in equity, historically, a court would have awarded the difference in the value of the trust assets that was lost due to the breach of fiduciary duty. That's what the court can do here. Alternatively, the court can order a modification of plan records. Now, that is exactly what the modification would say. That instead of the account being valued as of a date in 2004, it would be valued as of a date in early 2000. Whatever the district court determines is the earliest date practicable after the plan learned of the death of the participant. That's not a modification of records. That's a change in the plan provisions. I don't agree, Your Honor. The plan provisions say when the account is to be valued, and it's to be valued as soon as practicable as of the date of distribution, exactly, which is to occur as early as practicable after the death. That didn't occur here. It was not as early as practicable. And the plan records can be modified to show that the date of distribution, that is, the date as of which the assets should have been valued, is earlier. So you want it to show that the funds were distributed earlier than they actually were? That the plans shouldn't have been distributed, that the valuation date should have been earlier. Okay. Let me just say one thing. My concern was with your first argument where you say you distinguish it from the Peralta case. I don't see anywhere in your pleadings or in your arguments where you say that this is more than mere negligence, nor do I see any request to amend the complaint or anything anywhere that would allow you to argue that this is not the normal case of a trust simply mishandling matters. Well, simply mishandling matters, Your Honor. It is a breach of fiduciary duty. Okay. I mean, Peralta had not been decided when this case was briefed. No, I understand that. It wasn't. It was after the briefs. It was after the briefs. I do want to point out, Your Honor, that although Peralta is a sympathetic case and so is Bast, in neither of those cases were the plaintiffs asking to be put in the position that they would have occupied but for the breach. The — particularly in Peralta, the breach, as you pointed out, is the failure to notify the participant that the insurance policy has been canceled. The — Well, had they been notified, they would have had insurance, so that's where they'd like to be put. But that's not what they're asking for, according to the court in Peralta. What the plaintiff is asking for in Peralta is for the benefits under the plan that she alleges she would have had but for the breach. But she wouldn't have had any benefits under the plan but for the breach. It's a sympathetic claim, no doubt about it, but it's not one that can be remedied by putting her in the position she would have occupied but for the breach, because but for the breach, she would have had better information. She wouldn't have had the plan. The plan was canceled. The same is true of other cases that this Court has seen in the past. For example, Watkins v. Westinghouse-Hanford. There's a misrepresentation about the amount of the benefits that are owing under the plan, but for the breach, the participant would have had better information. He wouldn't have had the higher benefit. The same is true in Peralta. In Bast, we have requests for damages for such things as emotional distress, loss of consortium, and so forth. While those are very sympathetic claims, it's not clear that those are forms of relief that would have been available in equity. In contrast, Pomeroy and the restatement of trusts and other treatises make very clear that where a trust asset lost value due to a breach of fiduciary duty, the trustee was liable to the beneficiary for the full value of the asset. And that is exactly what has happened here. The trust assets lost value because of a breach of fiduciary duty, and the fiduciaries are liable for the full value. And that is true regardless of whether there is unjust enrichment or regardless of whether the value of the asset can be traced to the fiduciaries. Sereboff made clear that tracing isn't actually required for all forms of monetary relief. There was no tracing in Sereboff. That was one of the appellee's — excuse me, one of the appellant's arguments was that the assets can't be traced from the defendants to the — back to the plaintiffs. So this is not an equitable remedy. That was incorrect. I think we've exceeded the time by a bit. Thank you, Your Honor. Thank you. The case just argued will be submitted. The final case for oral argument this morning.
judges: Reinhardt, Rymer, Silverman